**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michelle E Goodbar, | No. CV-25-01345-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Richard Romo, | |
| Defendant. | |

Pending before the Court is Defendant's Motion to Dismiss (Doc. 10), Plaintiff's Response (Doc. 13), and Defendant's Reply (Doc. 14). For the following reasons, the Court **grants** Defendant's Motion.

**I.     BACKGROUND**

Defendant, a detective for Arizona Department of Public Safety ("AZDPS"), conducted an undercover drug purchase at a home in Phoenix, Arizona. (Doc. 1 at 3.) When Defendant arrived at the home, he met a woman who introduced herself as "Michelle." (Doc. 1 at 3.) Defendant offered to exchange stolen goods for drugs. Michelle relayed Defendant's offer to her uncle, who agreed to sell Defendant fentanyl for the stolen goods and cash. (Doc. 1 at 3.)

Defendant returned to the AZDPS office where an analyst helped identify Michelle. (Doc. 1 at 4.) Defendant relayed Michelle's name, aspects of her physical appearance, and the identity of her uncle. (Doc. 1 at 4.) Based on this information, the analyst provided Defendant with Plaintiff's driver's license photo. (Doc. 1 at 4.) Defendant concluded that

Plaintiff and Michelle were the same person based on the photo. (Doc. 1 at 4.) Plaintiff was then indicted for a class 2 felony, served with a summons, and arraigned. (Doc. 1 at 4.)

Plaintiff maintained that she was not Michelle and requested the prosecution to dismiss the case. (Doc. 1 at 5.) Plaintiff provided the prosecution with her alibi, photos of herself, and other information purporting to establish that she was not Michelle. (Doc. 1 at 5.) Plaintiff's dismissal request was denied. (Doc. 1 at 5.)

After, Plaintiff's counsel interviewed Defendant and presented him with evidence asserting that Plaintiff was not Michelle. (Doc. 1 at 6.) Nonetheless, Defendant maintained that Michelle and Plaintiff were the same person. (Doc. 1 at 6.) However, the prosecution dismissed the case. (Doc. 1 at 7.)

Prior to being charged, Plaintiff was employed by the Arizona Department of Economic Security ("AZDES"). (Doc. 1 at 7.) However, Plaintiff resigned when faced with the threat of termination because of her indictment. (Doc. 1 at 7.) After the charges were dismissed, Plaintiff was rehired in a different division of AZDES at a lower rate of pay. (Doc. 1 at 7.)

Plaintiff sued Defendant under 42 U.S.C. § 1983 for deprivation of her rights under the Fourth and Fourteenth Amendments. (Doc. 1 at 9.) Plaintiff argues that Defendant knowingly misidentified her, "wrongfully associated the case" with her, and "failed to comply with the law to identify and prosecute [her]." (Doc. 1at 8.) Such conduct, Plaintiff argues, deprived her of "[f]reedom from deprivation of liberty without due process" and "[f]reedom from summary punishment." (Doc. 1 at 9.) Plaintiff also seeks punitive damages based on Defendant's alleged "evil motives" and having "knowingly subjected [her] to a risk of substantial harm and conduct." (Doc. 1 at 9.) Defendant filed the instant Motion to Dismiss, arguing that the Complaint should be dismissed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim.

II.     **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the

claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This notice exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## III. DISCUSSION

To state a § 1983 claim, "a plaintiff must 'plead that (1) the defendants acted under color of state law and (2) deprived plaintiff of rights secured by the Constitution or federal statutes.'" *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 372 (9th Cir. 1999) (en banc) (quoting *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)). The parties do not dispute that Defendant was acting under the color of law while acting as a detective for AZDPS. (Doc. 10 at 3.) Accordingly, the Court only assesses whether Plaintiff sufficiently pleads that Defendant deprived her of constitutionally protected rights.

### A. Fourth Amendment

Plaintiff claims that Defendant deprived her of her rights under the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Court finds that Plaintiff has failed to allege that she was either unconstitutionally searched or seized by Defendant.

#### 1. Search

A search can occur in two ways. "First, under the *Katz* test, a search occurs when the 'government violates a subjective expectation of privacy that society recognizes as reasonable.'" *United States v. Esqueda*, 88 F.4th 818, 823 (9th Cir. 2023) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)). Second, a search occurs "when the government 'physically occupie[s] private property for the purpose of obtaining information,' 'to engage in conduct not explicitly or implicitly permitted' by the property owner." *Id.* (alteration in original) (internal citations omitted) (first quoting *United States v. Jones*, 565 U.S. 400, 404 (2012); and then *Florida v. Jardines*, 569 U.S. 1, 6 (2013)). Plaintiff has not alleged facts suggesting that Defendant violated her privacy expectations or occupied any of her private property.[1] Accordingly, the Court assesses whether Plaintiff has sufficiently alleged that Defendant unreasonably seized her.

---

[1] Defendant, in his Motion to Dismiss, argues that "Plaintiff does not allege that she, or any of her property, was subjected to a search." (Doc. 10 at 3–4.) Plaintiff, in her Response, does not contest this argument. (Doc. 13 at 5.) Instead, Plaintiff only argues that she sufficiently pleads that Defendant unconstitutionally seized her. (Doc. 13 at 5.)

2. *Seizure*

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, 'by means of physical force or show of authority,' terminates or restrains his freedom of movement . . . ." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal citation omitted) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). Here, Plaintiff argues that "[t]he indictment, summons, and arraignment effectively 'seized' [her] for Fourth Amendment Purposes." (Doc. 13 at 6.)

However, Plaintiff does not allege that she was ever held in custody, arrested, incarcerated, or physically restrained in any way. Furthermore, Plaintiff does not allege that she did not remain at liberty on her own recognizance throughout the foregoing procedures. Instead, Plaintiff argues in accord with Justice Ginsburg's concurrence in *Albright v. Oliver*, 510 U.S. 266, 276–81 (1994) (Ginsburg, J., concurring) (plurality opinion). (Doc. 14 at 6.) There, Justice Ginsburg posits that an unincarcerated person is "bound to appear, and is hence 'seized' for trial, when the state employs the less strong-arm means of a summons in lieu of arrest to secure his presence in court." *Id.* at 279. Defendant responds that "a summons to appear before a court coupled with certain pre-trial release restrictions, does not rise to the level of a Fourth Amendment seizure." (Doc. 10 at 4.) The Court agrees.

While some courts have considered and even adopted some version of Justice Ginsburg's *Albright* concurrence, *see Burg v. Gosselin*, 591 F.3d 95, 98–99 (2nd Cir. 2010) (citing cases), other courts have expressly rejected Justice Ginsburg's theory, *see Nieves v. McSweeney*, 241 F.3d 46, 55 (1st Cir. 2001) (citing cases). Still, "the view that an obligation to appear in court to face criminal charges constitutes a Fourth Amendment seizure is not the law." *Nieves*, 241 F.3d at 55. Instead, "seizure jurisprudence traditionally has centered on the initial deprivation of liberty that a seizure of the person entails." *Id.* Accordingly, "run-of-the-mill conditions of pretrial release do not fit comfortably within the recognized parameters of [a seizure]." *Id.*

The Court is persuaded by *Karam v. City of Burbank*, 352 F.3d 1188, 1193–94 (9th

Cir. 2003), which found that a person is not seized where they only face de minimus pre-trial restrictions. In *Karam*, the court found that a defendant charged with a misdemeanor was not seized when she was merely required to appear for all hearings and request permission before leaving the state. *Id.* at 1193. While Plaintiff was charged with a felony, that fact alone does not suggest that she was subject to any pretrial restrictions amounting to a seizure. Even the courts that find some combination of pretrial release restrictions can constitute a seizure still require relatively significant restrictions such as having to: obtain permission before leaving the state; regularly report to court officers for extended periods of time; provide law enforcement with financial and identifying information; and post a significant bond. *See id.* at 1193–94 (citing cases).

Applied here, Plaintiff has failed to point to any deprivation of liberty beyond the fact that she was indicted, summonsed, and arraigned. Standing alone, however, those events do not constitute a seizure under the Fourth Amendment. *See Ramirez v. Whitt*, No. CV-25-00941-PHX-SPL, 2025 WL 1911759, at *3 (D. Ariz., July 11, 2025) (finding that a claim for unlawful seizure fails where a claimant, who "was subjected to the legal process and the threat of criminal sanction," fails to present "any allegations that [the claimant] was 'otherwise exposed to any significant deprivation of liberty'" (quoting *Karam*, 352 F.3d at 1193)); *Bielanski v. County of Kane*, 550 F.3d 632, 642 (7th Cir. 2008) ("No court has held that a summons alone constitutes a seizure . . . ."). Accordingly, the Court finds that Plaintiff has failed to sufficiently allege that Defendant deprived her of any right protected by the Fourth Amendment.[2]

### B. Fourteenth Amendment

Plaintiff also alleges that Defendant deprived her of her Fourteenth Amendment due process rights. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Plaintiff does not specify whether she is claiming a violation of her

---

[2] Because Plaintiff insufficiently pleads that she was seized, the Court does not address the parties' arguments regarding the reasonableness of any purported seizure.

- 6 -

procedural or substantive due process rights. Regardless, "[t]o state a prima facie substantive or procedural due process claim, one must, as a threshold matter, identify a liberty or property interest protected by the Constitution." *United States v. Guillen-Cervantes*, 748 F.3d 870, 872 (9th Cir. 2014); *see also Hotop v. City of San Jose*, 982 F.3d 710, 718 (9th Cir. 2020) (noting that procedural and substantive due process claims "both require, as a threshold matter, that plaintiffs show they were deprived of a 'constitutionally protected life, liberty or property interest'" (quoting *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008))). Accordingly, the Court assesses whether Plaintiff has sufficiently alleged that she was deprived of a constitutionally protected life, liberty, or property interest.

Plaintiff provides that she was deprived of her constitutional right to "[f]reedom from summary punishment." (Doc. 1 at 9.) However, Plaintiff has not alleged any facts indicating that she was summarily punished. The charge against Plaintiff was dismissed. Additionally, Plaintiff does not otherwise allege that she was subject to a government imposed criminal or civil penalty.

Plaintiff further provides that she was deprived of her constitutional right to "[f]reedom from deprivation of liberty without due process." (Doc. 1 at 9.) Plaintiff alleges that because of Defendant's actions she: "resigned from her position under threat of termination as a result of her indictment"; was required to return to employment with AZDES in a different division at lower rate of pay and "start all over with her seniority, benefits, and Family Medical Leave Act benefits"; and "lost and will lose wages in the future." (Doc. 1 at 7–8.) The foregoing outcomes, however, do not implicate constitutionally protected interests.

The Court begins with Plaintiff's allegation that Defendant's conduct caused her to resign from AZDES under threat of termination. The Court recognizes that government employees can have a protected property interest in continued employment. *Perry v. Sindermann*, 408 U.S. 593, 599–603 (1972) (finding there to be a triable issue of fact as to whether a teacher in a state college system was deprived of a protected property interest

when that teacher's contract was terminated). However, such an interest only exists where there is "a legitimate claim to tenure or if the terms of the employment make it clear that the employee can be fired only for cause." *Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 922 (9th Cir. 2013). Plaintiff does not allege any facts suggesting that she "has a legitimate claim of entitlement to job tenure." *See Sindermann*, 408 U.S. at 602. Plaintiff alleges that she was employed at AZDEP for five years prior to her resignation but that fact, standing alone, is insufficient to suggest that Plaintiff had a legitimate entitlement to future employment. Plaintiff has not otherwise alleged that she could only have been fired for cause. While the foregoing analysis assumes that Plaintiff was, in essence, terminated, the Court is dubious of whether Plaintiff's bare allegation that she resigned under threat of termination constitutes a termination for due process purposes.

The Court turns next to Plaintiff's allegation that Defendant's conduct caused her to return to employment with AZDES in a different division at a lower rate of pay. The Court recognizes that a public employee can be deprived of a liberty interest where "[a] public employer . . . terminat[es] the employee if in so doing, the employer makes a charge that might seriously damage the terminated employee's standing and associations in his community or imposes on a terminated employee a stigma or other disability that forecloses his freedom to take advantage of other opportunities." *Blantz*, 727 F.3d at 925 (citation modified). Even assuming Defendant's alleged misidentification implicates such jurisprudence, Plaintiff did not suffer such a liberty deprivation because she was rehired by AZDEP. It is immaterial that Plaintiff was rehired at reduced pay because "'reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful employment within the trade or profession' do not constitute a deprivation of liberty." *Id.* (quoting *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 366 (9th Cir. 1976)).

The Court additionally finds that the Plaintiff's remaining alleged harms do not rise to the level of being a deprivation of life, liberty, or property. Plaintiff alleges that she was

"compelled to withdraw funds from her retirement in order to obtain defense counsel." (Doc. 1 at 7.) The Court does not find, nor does Plaintiff cite, any authority that her decision to hire counsel prior to arraignment implicates a constitutionally protected right under the Fourteenth Amendment.

Plaintiff also alleges that Defendant's investigation, and the resulting criminal charge, "significantly disrupted" "[h]er life with her immediate family, grandkids, and friends." While interference in certain familial relationships can implicate due process concerns, Plaintiff fails to raise such concerns. *See, e.g.*, *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018). Plaintiff does not establish, even cursorily, how Defendant interfered with her family relationships. Additionally, it is unclear how a state actor identifying an unknown suspect through a driver's license photo, even mistakenly, could implicate such concerns where the suspect is neither held in custody nor subject to criminal or civil penalties.

Finally, Plaintiff alleges that Defendant caused her "feelings of depression, anxiety, fear, anger, and humiliation." (Doc. 1at and otherwise caused her to lose "sleep, focus" and otherwise resulted in "social isolation, and alienation from family." (Doc. 1 at 8.) The Court finds no authority suggesting that the foregoing allegations implicate a constitutionally protected right under the Fourteenth Amendment. Nor has Plaintiff linked these allegations to such a right if asserted as injuries.

Accordingly, Plaintiff has failed pass the threshold of alleging that Defendant has deprived her of a constitutionally protected right. *See Guillen-Cervantes*, 748 F.3d at 872. The Court thus finds that Plaintiff has failed to state a claim under § 1983 for deprivation of her rights under the Fourth and Fourteenth Amendments. Thus, her claim for punitive damages also fails. *See Alvarez v. CSAA Gen. Ins. Co.*, No. CV-24-00617-PHX-SMB, 2025 WL 389140, at *8 (D. Ariz. Feb. 4, 2025) ("If a party fails to sustain a claim for an underlying tort, a claim for punitive damages will not stand.").

**C. Qualified Immunity**

Additionally, the Court agrees with Defendant's argument that the qualified

immunity doctrine otherwise shields him from suit. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Estate of Lopez ex rel. Lopez v. Gelhaus*, 817 F.3d 998, 1005 (9th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Id.* (quoting *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014)). While this Court has found that there was no violation of a constitutional right, as discussed below the Court also finds that there was no clearly established right.

Whether a right was "clearly established" is "solely a question of law for the judge." *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting *Tortu v. L.V. Metro. Police Dept.*, 556 F.3d 1075, 1085 (9th Cir. 2009)). And Plaintiff "bears the burden of proof regarding whether the right is clearly established." *DiRuzza v. County of Tehama*, 206 F.3d 1304, 1313 (9th Cir. 2000). Unless "officers of reasonable competence could disagree on the issue whether a chosen course of action is constitutional, immunity should be recognized." *Biggs v. Best, Best & Krieger*, 189 F.3d 989, 993 (9th Cir. 1999) (citation modified).

However, "[t]he Supreme Court has repeatedly instructed that we examine 'whether the violative nature of *particular* conduct is clearly established' by controlling precedent, not whether the conduct violates a general principle of law." *Sharp v. County of Orange*, 871 F.3d 901, 910 (9th Cir. 2017) (emphasis in original) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). Consequently, even when precedent establishes a "general rule," courts "cannot simply apply that general rule to the facts of [the present] case." *Id.* at 910–11. "Except in the rare case of an 'obvious' instance of constitutional misconduct," a plaintiff "must '*identify a case* where an officer acting under similar circumstances as [defendants]

was held to have violated the Fourth Amendment.'" *Id.* at 911 (alteration in original) (emphasis in original) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

Put differently, a plaintiff "must point to prior case law that articulates a constitutional rule specific enough to alert *these* [officers] *in this case* that *their particular conduct* was unlawful." *Id.* (emphasis in original). This notice requires that the prior precedent be "'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

Plaintiff has not met this burden here. Plaintiff has not pointed to a sufficiently analogous case. Plaintiff argues that *Ochser v. Funk*, 228 P.3d 1061 (Ariz. 2011) clearly establishes that Defendant violated her constitutional rights. (Doc. 13 at 10.) There, law enforcement went to arrest a man pursuant to a quashed warrant that showed as active in law enforcement records. *Id.* at 1064. The man "told the [officers] that he had a certified copy of the court's minute entry quashing the warrant in the inbox at his office, about twenty yards from the scene of the arrest." *Id.* Law enforcement still arrested him. *Id.* The court found that law enforcement violated the man's Fourth Amendment rights. *Id.* at 1067. The court noted that when "law enforcement officers arrest someone pursuant to a warrant and are confronted with readily available information that objectively casts genuine doubt on the warrant's validity, the officers must undertake further reasonable inquiry." *Id.*

*Ochser* does not "clearly establish" that a reasonable official in Defendant's position would have understood that they were violating Plaintiff's Fourth Amendment rights. To start, *Ochser* involved an officer making an arrest based on an invalid warrant. *See id.* Here, Plaintiff was not arrested, and Defendant played no part in the procurement or execution of warrant. Furthermore, *Ochser* does not discuss an undercover officer's obligations in identification of an unknown suspect from a driver's license photograph. Instead, *Ochser* merely requires officials to consider readily accessible information that "objectively casts genuine doubt" on the validity of an arrest, which is clearly a "seizure"

under the Fourth Amendment. *See id.*

IV.           **LEAVE TO AMEND**

Federal Rule of Civil Procedure 15(a) requires that leave to amend be "freely give[n] when justice so requires." Leave to amend should not be denied unless "the proposed amendment either lacks merit or would not serve any purpose because to grant it would be futile in saving the plaintiff's suit." *Universal Mortg. Co. v. Prudential Ins. Co.*, 799 F.2d 458, 459 (9th Cir. 1986). Therefore, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

V.           **CONCLUSION**

For the above reasons,

**IT IS HEREBY ORDERED granting** Defendant's Motion to Dismiss (Doc. 10) with leave for Plaintiff to amend her Complaint. If Plaintiff so chooses, she shall file an Amended Complaint no later than thirty (30) days after the date this Order is issued.

**IT IS FURTHER ORDERED** that if Plaintiff does not file an Amended Complaint within thirty (30) days of the date this Order is entered, the Clerk of Court shall dismiss this action without further order of this Court.

Dated this 10th day of September, 2025.

_____
Honorable Susan M. Brnovich
United States District Judge